**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
Elkins

**SARA CAPELLI**,

    Appellant,

  v.            **Civil Action No. 2:14-CV-87**
                 Bankruptcy No. 2:12-BK-01443
**STEPHEN GREGORY CAPELLI, JR.**,  Judge Bailey

    Appellee.

**MEMORANDUM OPINION AND ORDER**
**AFFIRMING DECISION OF THE BANKRUPTCY COURT**

This is an appeal of an Order of the United States Bankruptcy Court entered September 29, 2014, which overruled Sara Capelli's objection to the exemptions claimed by the Debtor. *In re Capelli*, 518 B.R. 873 (Bankr. N.D. W.Va. 2014).

On December 4, 2013, the Debtor filed a voluntary Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Northern District of West Virginia. Because the Debtor had moved to West Virginia from Virginia less than 730 days before the petition date, he was disqualified by the domiciliary requirement of 11 U.S.C. § 522(b)(3)(A) from claiming state law exemptions under West Virginia law. Because the state in which he resided for 180 days prior to the 730 day period, Virginia, is an opt-out state which limits its exemptions to residents of Virginia, the Debtor was unable to claim Virginia's state law exemptions.

The issue presented by this case is one of the statutory construction of § 522(b)(3),

1

which provides as follows:

>(3) Property listed in this paragraph is--
>
>>(A) subject to subsections (o) and (p), any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition to the place in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition or if the debtor's domicile has not been located in a single State for such 730-day period, the place in which the debtor's domicile was located for 180 days immediately preceding the 730-day period or for a longer portion of such 180-day period than in any other place;
>>
>>(B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law; and
>>
>>(C) retirement funds to the extent that those funds are in a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986.
>
>If the effect of the domiciliary requirement under subparagraph (A) is to

render the debtor ineligible for any exemption, the debtor may elect to exempt property that is specified under subsection (d).

In the typical case, the statute is clear that a debtor, being entitled to the exemptions of either state, would be able to utilize the federal exemptions set forth in § 522(d), by virtue of the final phrase of § 522(b)(3). This case is complicated by the fact that the Debtor and his estranged spouse own property in Virginia as tenants by the entireties, which he could, but elected not to, exempt under § 522(b)(3)(B). The Debtor contends that the fact that he could have exempted that property under § 522(b)(3)(B) is no impediment to his use of the federal exemptions. On the other hand, Ms. Capelli contends that since the Debtor is eligible for the exemption provided in § 522(b)(3)(B), the final phrase of § 522(b)(3) is inapplicable.

The final phrase provides that "[i]f the effect of the domiciliary requirement under subparagraph (A) is to render the debtor ineligible for any exemption, the debtor may elect to exempt property that is specified under subsection (d)."

Judge Flatley held that:

the court finds that the legislative history and intent behind § 522(b)(3), and particularly the concluding sentence thereof, makes clear that "ineligible for any exemption" means "ineligible for [any single] exemption [under subparagraph (A)]." This interpretation is supported by the notion that debtors could historically claim as exempt both property according to the exemption scheme of their domicile and property held as a tenancy by the entirety, which may be located outside their domicile; the fact that Congress did not change the relationship between what is now § 522(b)(3)(A) and (B),

and, in fact, expanded the scope of exemptible property under § 522(b)(3) by adding subparagraph (C); and the express reference to § 522(b)(3)(A) in the concluding sentence of § 522(b)(3), whose operation is premised upon the effect of a domiciliary analysis; an analysis which is not linked at all to the application of subparagraphs (B) or (C).

518 B.R. at 880.

Judge Flatley added:

Ms. Capelli's interpretation of the concluding sentence of § 522(b)(3) leads to results which are inconsistent with its language and purpose. To reiterate, the triggering feature of the concluding sentence is the failure of "any exemption" based upon a domiciliary requirement. As demonstrated, neither subparagraphs (B) or (C) are domicile dependent and thus cannot fail based upon the effect of a domiciliary requirement under subparagraph (A). Therefore, the term "any exemption" must relate to the failure of any exemption under subparagraph (A) only. Moreover, Ms. Capelli's interpretation would frustrate the purpose of the concluding sentence of § 522(b)(3) which, by preserving an exemption scheme to debtors under § 522(d), in turn promotes the Bankruptcy Code's concept of a fresh start. For instance, consistent with Ms. Capelli's view, in addition to the unavailability of exemptions under subparagraph (A), a debtor must also lack resort to any exemptions under subparagraph (B) and (C) before he or she could invoke the exemptions provided by § 522(d). That would mean that a debtor with a minimal amount, for instance no more than $500.00, in a qualifying

retirement account under subparagraph (C) would be unable to exempt property listed in § 522(d). Such a debtor would thus be distinctly disadvantaged and his or her fresh start at jeopardy; a result demonstrably at odds with the fail-safe provisions provided by Congress in the concluding sentence of § 522(b)(3).

518 B.R. at 880-81.

This Court finds that Judge Flatley's holding is correct. The domiciliary requirement under § 522(b)(3)(A) has absolutely no effect on subparagraphs (B) or (C). The requirement cannot render a debtor ineligible for those exemptions. In fact, every debtor is "eligible" for those exemptions. It is clear that the focus of Congress in enacting the final phrase was to ameliorate the effect of its amendment to § 522(b)(3)(A), which could leave a debtor ineligible for any state exemptions.

This Court agrees with Judge Flatley that the interpretation advanced by Ms. Capelli would be contrary to the fresh start purposes of bankruptcy law. Such an interpretation would leave a debtor unable to exempt the basics of life, such as furniture, clothing, and kitchen equipment. As noted by Judge Flatley, such an interpretation would also mean that a debtor with a minimal amount, for instance no more than $500.00, in a qualifying retirement account under subparagraph (C) would be unable to exempt property listed in § 522(d).

To borrow from Judge Guzman in *In re Holland*, 366 B.R. 825, (N.D. Ill. 2007) dealing with a different issue, "[t]he interpretation offered by the trustee also thwarts one of the primary purposes of the bankruptcy code: to give debtors a fresh start. See *In re*

***Smith***, 640 F.2d 888, 891 (7th Cir. 1981) (stating that Bankruptcy Reform Act of 1978 was motivated by the government's 'interest in seeing that a debtor [who] goes through bankruptcy comes out with adequate possessions to begin his fresh start' (quotation omitted)). Indeed, as one commentator notes, 'by 1970 the fresh start .... had developed into perhaps the dominant purpose for bankruptcy, and exemptions in bankruptcy were now recognized ... as central to the revitalization process that the fresh start idea represented.' William J. Woodward, Jr., Exemptions, Opting Out, and Bankruptcy Reform, 43 Ohio St. L.J., 335, 342 (1982). To effectuate that purpose, "[e]xemption statutes are ... construed liberally." ***Smith***, 640 F.2d at 891. The trustee, however, does just the opposite, narrowly construing the statute to reduce the number of available exemptions, an approach that conflicts with the purpose of the code.

"Exemption statutes should be liberally construed in favor of the debtor. If it is possible to construe an exemption statute in ways that are both favorable and unfavorable to a debtor, then the favorable method should be chosen. ***In re Barker***, 768 F.2d 191, 196 (7th Cir. 1985); ***In re Jackson***, 95 B.R. 590, 593 (Bankr. C.D. Ill. 1989)." ***In re Dealey***, 204 B.R. 17, 18 (Bankr. C.D. Ill. 1997).

For the reasons stated above, the decision of the United States Bankruptcy Court is **AFFIRMED**. This case is **DISMISSED** and **ORDERED STRICKEN** from the active docket of this Court.

It is so **ORDERED**.

The Clerk is hereby directed to transmit copies of this Order to all counsel of record herein and to the Clerk of the United States Bankruptcy Court for the Northern District of

West Virginia.

**DATED:** January 29, 2015.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE